number 141729 Clayton Richard Gordon et al. versus Loretta Lynch et al. Thank you. Mr. Chen. Good morning, Your Honors. May it please the Court, Hans Chen from the United States Department of Justice representing the respondents. I'd like to reserve three minutes. You may have it. Your Honor, the District Court's summary judgment order in this case clearly violates this Court's en banc decisions in Casaneda. You know, I've got some problems with, I mean, I think I understand what you're saying, but my understanding of a divided decision, an equally divided decision by the en banc Court is that the en banc Court's decision has no force in effect. The District Court's decision stands. So I don't see how the law of the case doctrine can apply. And you certainly give us no case where the decisions of an equally divided appellate court have been held in some way to be the law of the case. You know, I believe the plaintiff in this case has cited law of the case, which were not necessarily challenging. We also believe, Your Honor, that if you simply read the decisions in Casaneda, both Judge Keada's decision and Judge Barron's decisions, that they provide prevailing opinion that does not hold. And certainly, finally, Your Honor, and thirdly, Your Honors, this panel is free to recognize that the 48-hour rule, the bright-line rule that the District Court enacted, simply is unworkable and contrary to the statute. There may be persuasive force in that argument, and we're certainly free to pay heed to what both made that argument in your brief. I mean, I think that's a very strong argument for the government that the imposition of a bright-line 48-hour rule is contrary to the statute and beyond the authority of the District Court. But I'm not at all certain that you've made and preserved that argument in your brief. Your Honor, as to the limited issue that I believe you're bringing up as to law of the case, that's been argued. Forget law of the case, all right? The more important question is whether your brief, I would hate to see a case like this go by default because the government has failed to brief an important issue that might well be decided in its favor if it was proffered in a timely manner. And my question is, is how can I read your brief as putting in issue the question of whether the 48-hour rule is indeed contrary to the statute and an improper exercise of the District Court's authority, which I take it from your opening remarks is your underlying position. Yes, Your Honor, it is. But I don't read that in your brief. No, Your Honor. The reason that this Court can reach that question is because the panel decision as well as the en banc decision both set forth law and to the extent that... The panel decision is born. There is no panel decision. Then to the extent, Your Honor, that the en banc decision... The panel decision is born. At the time the en banc was granted, the panel decision was withdrawn. It is legally as if it didn't exist. I understand that, Your Honor. And so what we have is we've got two opinions by an equally divided en banc court. Either or both of them may have persuasive force, although they're not law of the case. That's not the question I'm asking. The question I'm asking relates to the way you've chosen to brief the case on behalf of the government. Have you put in issue the underlying issue that you started out with, whether or not this 48-hour rule is contrary to the statute and an improper exercise of the district court's authority? Your Honor, when the district court issued its ruling, it was timely appealed to this court. And it was timely appealed as being contrary to the en banc opinions to the extent that there needs to be some mechanism to challenge the decision of the district court, law of the case, which the en banc hearings... I'm not sure there's a yes or no answer to my question. We have, Your Honor. Am I right? And will I look in the brief to find that statement? Is it only in the law of the case argument? So if I reject the law of the case argument, the issue is now gone? It's in the law of the case argument, Your Honor, but we also take the position that the two en banc decisions provide a prevailing opinion that does give guidance to the district courts below and that the district court in this case issued an opinion that is contrary to those circuit court en banc decisions, Your Honor. Ma'am, you know, you could have gone back to the district court and said you issued this relief before the court of appeals had to address the question of the statutory interpretation. And now the court of appeals has evenly divided. But its opinions really are not consistent in their logic with the way you addressed the question. Why should that issue come to us when you have not made the argument to the court, which actually in some ways it could be argued prematurely issued a relief? That's my first question. My second question is this injunction has been in effect for more than two years, I think? Yes. It was not stayed by either the district court or by us. Is that correct? Correct, Your Honor. So what are the practical enforcement problems that have come up? You don't make an argument to us that there are any. So to answer your first question, Your Honor, as to why the respondents didn't appeal, or sorry, take this up with you. You want us to resolve these questions rather than having presented it to the district court in the first place. You want us to tell the district court what to do here. You want us to vacate the injunction, and then you want us to tell the district court you can't issue any relief that includes a flat 48-hour rule. And furthermore, you can't issue any relief that isn't on an individual basis. Am I correct? That's what you want? Yes, Your Honor. And there's nothing improper with the respondents seeking that relief from this court. I didn't suggest it was improper. Why not first go to the district court or have us say to the district court, you'd better consider this? And why should we vacate the injunction in the meantime? Well, Your Honor, the vacating of the injunction would follow with a remand order for the district court to promise. Not necessarily. Fine, then we will take that result as well, Your Honor. I'm sorry. This is an important statement. Yes, I understand, Your Honor. You would consent to the continuation of the injunction on a remand order to the district court? Is that what you just said? No, Your Honor. I was saying that if this panel were to vacate the injunction without a remand, that would be a result we would be more than satisfied with. See, here's what the problem is, counsel, one of the problems. We normally review decisions by district courts. You're asking us to review a decision that the district court might well change because there's been intervening authority, but no one has given the district court a chance to express its opinion on what effect, if any, that intervening authority has. So the real purport of Judge Lynch's question, in my mind at least, is why shouldn't we simply stay this case and ask the district court whether it wishes to amend its injunction in view of the two opinions of the divided court in the en banc? A stay, Your Honor, of this appeal with the direction to the district court to review its semi-judgment order would essentially result in the same request that we're making. How do we know that? In other words, you think that there's some sign you think that the district court is dug in, that the district court, that your arguments aren't persuasive enough to move to the district court? I hesitate, Your Honor, to divulge appellate decisions that the respondent made, but that is certainly a consideration, Your Honor, and that was one of the prudential reasons that we sought relief from this court rather than return to the district court. Okay, I've got a different set of issues. First, normally one would think where it's a question of statutory interpretation that we'd get the agency's view on what is a reasonable time, including taking Judge Barron's opinion, including whether that can be a blanket rule or whether it has to be an individuated rule. Is the government arguing to us that the agency needs to be given an opportunity to take a position on those issues? We are, Your Honor, and the position that the government's taking is that the reasonableness, as defined by Judge Barron, needs to be made on an individualized basis, case-by-case basis, and that's for the agency to make. Judge Barron speaks about unexplained year-long gaps as the cause of his holding, gaps between criminal custody and immigration custody. What he's therefore establishing as a rule is a situation where the government explains those gaps, where it explains those gaps which are less than a year. The agency could take that position, but it could also take the position that the burden of individualized determinations here is so great that we'd be better off with a sort of blanket rule. Agreed that the agency could reasonably take that position? The BIA, the Board of Immigration Appeals, which is the immigration agency entitled to the power to interpret immigration statutes, could certainly do so, Your Honor. It hasn't done so, and in the absence of that, Your Honor, what we're saying is that it is up to the front-line interpreters of the immigration law, that is, the immigration judges in an adversarial process where the Department of Homeland Security serves as the agency seeking removal, that in that front-line adjudicatory process, that's where the determination gets made, as Judge Barron... Well, Judge Barron writes for only three. That's hardly the holding of this Court. And I'm very puzzled by your response, because I think you opened by agreeing with Judge Selya that this, in the first instance, isn't really something that is up to the federal district court. In the first instance, it's up to the agency to take some positions on that, and then there are rules about Chevron and so on and so forth. And yet, you're telling me the agency hasn't and won't take a position? No, Your Honor. Let me reconcile the role of this Court and of the immigration courts. What the respondent is arguing for, Your Honor, is for this Court to recognize that a bright-line rule is improper, it's impractical, and it's inconsistent with the en banc decisions in Castaneda. And then once we reach that point, Your Honor, then who determines whether or not a reasonable period has been exceeded? That would be, Your Honor, for the immigration judges to decide. Okay, now there's a further complicating factor, which doesn't have to do with statutory interpretation, but does have to do with what may be due process limitations on how long someone may be held. The Supreme Court has that issue in front of it. It looked at the question in Demore v. Kim. The Solicitor General had provided some information, which it's now confessed error about the period of detention appears to be much greater than was presented to the Supreme Court. So we've got two different strands going on here, both having to do with the timing of when a bail hearing might take place. Yes, Your Honor. The issue that you just raised is not one that is implicated by this case. The issue of length of detention is, as Your Honor noted, before the Supreme Court in Rodriguez, which will be argued later this month. It's also before the First Circuit in the Reed case. The length of detention has its own proposed remedies that the plaintiffs and the detainees are seeking. Those concerns and remedies that the petitioners and detainees are raising there have nothing to do, Your Honor, with the controversy here. Oh, well, I hesitate to go too far down that road because both situations call into question whether or not the statute, I realize we're under a different subsection of the statute here, but I think it's a perfect analogy, whether the statute authorizes a bright line rule or requires an individualized determination. That's essentially the issue that the Supreme Court is going to decide in Jennings. That's exactly the issue that we decided under a different subsection of the statute in Reed, which inexplicably, in my view, neither party cited to us in the briefing in this case or by 28J letter. And I think the purport of Judge Lynch's question is whether or not, with arguments coming up in Jennings later this month, it would be prudent for us to wait to see if we are informed by the result that the court reaches in Jennings. I don't think so, Your Honor. And in fact, with Jennings, there was a cert petition raising this issue before the court today about what triggers the mandatory detention. The Supreme Court denied the cert petition on that issue, on this issue. The issue in Jennings is about how long an individual may be detained before or if he then gets a bond hearing. The issue here is whether or not mandatory detention can begin at all if there is a gap in custody. And specifically, if there is a gap in custody that exceeds a bright line of 48 hours. Those are two different issues, Your Honor. Of course, they both involve mandatory detention under 8 U.S.C. 1226C. But in Jennings and in Reed, the issue then is the duration of detention that may run before a bond hearing might be required. Here, the issue is, does any sort of gap in custody preclude the imposition of mandatory detention in the first place? And I think the distinction, I hope, is clear. And so, Your Honor, I'm out of time. I'll take up any further questions while I reserve time. You may proceed. Good morning, Your Honors, and may it please the Court. And congratulations, Judge Salia, on your anniversary. I think condolences may be better. Perhaps so. We'll see how well the argument goes, and then we'll know. I'm Adriana Lafai here on behalf of the plaintiffs. And as Your Honors well know, this is not our first time up here on this case. Now, despite what we just heard, and I'll address that in a moment, the only issue that is properly presented for review here today is whether anything in custody that has already decided the meaning of the when-release clause in a way that forecloses the remedy that the district court adopted. No, I don't agree. The district court issued this relief without the benefit of any thinking by the Court of Appeals. It might very well have issued a different form of relief had it the benefit of that thinking. You say unless that thinking compels the district court to do something else, the government loses its appeal. I don't see why that follows at all. This is a type of equitable belief, and the notion of a 48-hour time period is, in my view, inconsistent with both positions in the en banc castemata opinion. So there is some frustration over what I will call the blinders that each of you have attempted to put on our court in handling this problem. It's a real-life problem. We're quite well aware of that, and we're struggling to find a good solution to this problem. Your Honor, let me perhaps address what the district court did and why I think there's no conflict with castemata, and I think this will tie in somewhat to the reasons that we think this court should apply the ordinary rules of waiver and hold the appellant here to its request. I don't think there's a requirement to present the issues clearly and in a non-perfunctory manner. But Judge Ponzer was actually very sensitive to the considerations that Your Honor has raised here. He was concerned about the practical effect of requiring the government to quickly take someone into custody, and he was very sensitive about his belief that there might be some reasonable time and how to address that within the context of the facts. And I think that the fact that 48 hours is a reasonable time to start with, that's certainly subject to question. The other thing is, should it be an individualized determination as opposed to a flat rule? You see, the very scenario that you paint, Judge Ponzer's concern with the practical effects, all of which are laudable, are exactly the same concerns that he articulated in Reed. And despite those concerns, despite our recognition of them, we held, now Reed is a holding, not a divided opinion, we held in Reed that a bright line rule was not appropriate under the statute, and that individualized determinations were required. That's, to my mind, the question that we face here, the threshold question. Whether there must be individualized determinations in these cases as opposed to some type of bright line rule, and that's a question that we've got to face before we get into whether 48 hours is reasonable, whether it should be 96 hours, or anything else. That's why I think Reed bears very heavily on this case, because that opinion goes right through the same calculus that we've got to go through in this case, and reaches a conclusion, maybe for somehow or for some reason will be different in this case, but reaches the conclusion that this has got to be individual determinations, at least on the decision of release for mandatory detention. Now maybe it's somehow different on the question of when released. I do think it's different, Your Honor, and that's because Reed, like other constitutional cases this court has addressed, requires, as this court held in the opinion that Your Honor was part of, requires a case-by-case determination. But here the issue is one of statutory construction, and the word at issue... But it's the same statute, just a different subsection. Well, it is the same statute, Your Honor, but the statutory construction question is a different one, and it's about what Congress meant to say when it compelled the agency to take custody of non-citizens when they were released from criminal custody. I see we already have guidance on that. We know that three judges of this court thought that when released had a temporal element, but there's nothing in Judge Barron's opinion that contraveils the idea that it would be an individualized determination. And we know that three other judges of this court thought that there was no temporal aspect at all, and we know that when released should simply be read as after release. There may be a due process limitation, but not a temporal limitation built into the statute. And under either construction, it seems to me an individualized determination would be required. I don't think that's quite the case as to what the positions were in Castaneda, Your Honor. The issue in Castaneda was whether the when-release clause mattered. And as to that issue, of course, this court was divided. But Castaneda was an individual case and wasn't talking about a 48-hour case. It was talking about a case that arguably raised some due process concerns. That's right, Your Honor. But the secondary issue in Castaneda was the meaning of when-release. And there, because the gaps in custody were so large, Yes, or well beyond any 48-hour time period. Very much so, Your Honor. No member of that court, and I sat on that court and went through what were actually very painful deliberations for us, thought that we were talking about a mere 48 hours. And that may be the case, Your Honor. Again, we think on the issue presented of whether there's actual preclusion, there is no preclusion. But I take Your Honor's point that I should move past that argument. Yes, you better. So let me highlight some of what was said in Castaneda. One of the things that we have argued to this court and that Judge Barron pointed out is that Congress, in directing the agency to take custody when released, Congress was concerned that non-citizens serving criminal custody be transferred directly into ICE custody, that they not have an opportunity to return to the community. And in saying so, Judge Barron not only said that Congress intended to limit mandatory detention to people coming right out of criminal custody. Those are his words. No, he did not say, well, go on. Those are his words at footnote 40. And the entire court then looked for guidance to the decisions of the BIA and interpreted them differently. But you're short-circuiting the process by saying it's up to an individual federal court judge to issue class-wide relief. And that doesn't seem consistent. Well, Judge Barron not only consulted the government on this point, but also due respect to the view of the agency. And let me explain what I mean by both of those. When fashioning the rule, Judge Ponser first did not define 48 hours as the limit for the statute. He defined the class that way after concluding that that was a point at which everyone had passed to the point of reasonableness. So he did not define exactly where, he didn't define a bright line cutoff or anything like that. 48 hours or less. Right. Everyone has passed the point of reasonableness. So someone who is released from custody, all right, and is picked up outside the prison by an accomplice, assumes a false identity and goes into hiding immediately, and isn't discovered until 72 hours, cannot be considered, cannot be held on mandatory detention under Judge Ponser's ruling. That's right now. They might have a very quick case for bail. He makes no allowance at all, no realistic allowance, for the individual circumstances that can alter individual cases. 48 hours may be the maximum in some few cases, but I'm struggling with the notion of why, as Judge Lynch puts it, a single district judge should be able on a class-wide basis to say it will always be the maximum. Well, and that brings us to what I think Judge Lynch has been referring to, which is the agency and the agency's interpretation. What the agency has said about the meaning of when released is that that clause directs immediate detention. And in the case of Mr. Rojas himself, the agency only reached the larger question about whether when released matters because it concluded that Mr. Rojas, who had a two-day gap in his custody, had not been detained when released. And in the face of litigation on this issue around the country for the past 10 years, the BIA has never chosen to revise its statements not only in matter of Rojas, but in cases like matter of Adonichi and other cases that interpret when released to require immediate detention. It has not revised its conclusion in matter of Rojas that the when released clause was not satisfied by a two-day gap. Well, they want the Supreme Court to resolve the issue. I mean, the majority of circuits were on the chaotic side. There's now one Ninth Circuit opinion which sides with Judge Barron. Was cert sought in any of these cases? No, it was not sought in Castaneda, Your Honor. In the Ninth Circuit, the government, I believe, recently sought an extension of the deadline to petition for rehearing. But I think Your Honor's point actually raises something important, which is that there is a very important split here about whether the when released clause matters. And certainly Your Honor's position and Judge Kayada's position may one day be vindicated in that circumstance. But all of that counsels, I think, application of the ordinary rules of waiver here. If this court were to vacate the injunction issued by Judge Ponser, it would be doing so in the absence of briefing on the meaning of the when released clause. It would be doing so in a circumstance in which the BIA has said that detention two days later is not detention when released and has never chosen to revise its rule. And it would be doing so... This matter of rule has a presidential opinion? It is. Now, I don't... I don't think it is. The BIA, as you know, classifies its opinions, designates some as presidential. Yes, it is designated as presidential. Okay. And it would be doing so even though Judge Ponser actually followed the agency position in this case. And what that decision would do, I think, is not only go against... It never did. Well, on the meaning of when, Your Honor. Of course, there's the larger split that I think we're not re-litigating here today about whether the when released clause matters. But I think, as Your Honor pointed out, that's a question probably for another court at another time. Can I ask you... Let me switch subjects again. Does this injunction violate 8 U.S.C. 1252-F1? No, it doesn't, Your Honor. We might not agree with the Ninth Circuit. The district court relied on that. I assume your argument is the government waived that point. But let's put that aside. Why do you think that this injunction, this class-wide injunction, does not violate the statute, which on its face seems to prohibit exactly that? Well, what the statute prohibits is injunctions that would injure the operation of the statute. The statute doesn't say that. The word operation doesn't appear on the statute. I may not be remembering the exact phrasing of the statute, Your Honor, but what Judge Ponson found is that he was not preventing the government from enforcing the statute. What he was doing was actually requiring them to enforce it correctly as he interpreted the statute. And, of course, the substance of that interpretation as to whether the one-release clause matters was upheld in this Court's divided ruling in Castaneda. By an equally divided Court. Does this law, the case argument, actually matter? Go ahead and answer. I'll just address that. Well, we think, Your Honor, particularly because there is no conflict here with the BIA, and the BIA has chosen not to weigh in on revising its previous determination that two days was not detention when released. Is this a separate waiver argument? No. Where I was going with that is I think that provides all the more reason for this Court to apply the ordinary rules of waiver that it has applied since Your Honor's decision in Zanino and Your Honor's decision in Bernardo earlier this year and find that there is no conflict here, regardless of how we interpret the law of the case, whether there is law of the case at all, there certainly is no conflict with anything that's in Castaneda. Okay, thank you. Thank you, Your Honors. You have three minutes, I believe. Yes, Your Honor, and I don't believe I'll be taking all of it. I just wanted to address a question that Judge Lynch asked earlier about whether we have any sort of real-world experience in the last two years. We don't at this point, Your Honor, because that was not the posture of this appeal. This appeal was to argue that Judge Ponser's district court injunction was incorrect. I'm sorry, but I do think you should have been prepared on that question. It certainly was a logical one for the court to ask. Yes, Your Honor, it is, and in response I would say two things. One is that there are certainly real-world possibilities. Judge Selya has raised one in terms of absconding. The other very likely scenario, Your Honor, is that 48 hours is simply not enough for an immigration officer from Boston to travel up to Maine in the middle of winter through a winter that you had last year. Two years ago. Two years ago, yes, Your Honor. The panel decision in Castaneda, I raised it earlier. I tried it for doing so because it's a big deal. I'm sorry. Are you asking for an opportunity to present this data to the district court? That was my other point, Your Honor. In addition to the easily imaginable practical possibilities, one of which Judge Selya raised, on remand, Your Honor, this would be an issue for discussion and evidence for the district court to take into account. And what happens to the injunction in the meantime? Your Honor, we would ask that it be vacated. And, yes, we would ask that it be vacated. Anything further? No. Anything further? No, thank you. Thank you, Your Honor.